Before we begin, note that Judge O'Malley is a member of this panel. She was not able to be here today. She is listening to the oral argument. She does not plan to ask questions, but she's a full participant in the panel and deliberations. So with that, let's begin with the first case, number 19-1206, Sorrells v. Department of Justice. Yes, thank you, Your Honor. May it please the Court. There's a lot in this case that is fundamentally wrong in the way it was allowed to be prosecuted and the way we were surprised, but I think it's important to understand that at its core it's a USERRA case. And the central issue was whether or not the Drug Enforcement Administration discredited or failed to take into account in calculating my client's pay grade is military service. And that fact is undisputed because Ms. Tanya Bingham-Schweider testified that she did not consider my client's service in law enforcement in Haiti. While it was, quote, law enforcement, she said it didn't protect federal law. Wait a minute. One of your arguments here is that the A.J. made a mistake in interpreting the testimony. Correct. As to whether the qualifications for the position in 1998 were to be determined as of the date of the vacancy announcement or the date of the hiring, correct? Correct. And what is it that happened between, in terms of his accumulating additional experience, what happened between the date of the vacancy announcement and the hiring that was pertinent? He continued to serve as a police officer in California and then if you credit... Police officer or probation officer? Yes, but under California law, as we explained in the case in Chief, he's a peace officer who's assigned law enforcement type qualifications and duties. So the issue for the judge was not, the judge did not reach... I'm just trying to understand what happened. So you say he continued to serve as a probation officer? Correct. And how long did he serve as a probation officer before the vacancy announcement? His testimony was that at the time of the vacancy announcement, he had a total amount of time of a year and a half of qualifying law enforcement experience. Okay. And he accumulated, according to you, after the vacancy announcement and before the hiring, what? Correct. He accumulated, he had seven months in Haiti and the remainder of the time of, I think it was 11 months was in California, in the system in California. And he only needed one year of time, right? Correct, one year. Right. And that could have been satisfied, in your view, by the probation officer's experience alone, right? Correct. Yes, correct. And so you consider that probation officer experience relevant to whether he would have been qualified for that higher pay grade, right? Correct. And the administrative logics didn't really reach that issue. He suggested that the military time might actually qualify. He came down to his decision solely based on Tanya Bingham Schweider's 11th hour and unsurprising testimony that she had calculated that the decision on how to set up a grade for a DEA applicant occurred at the time of application, not at the time the vacancy announcement closed. She did testify to that fact, right? Right. Well, she contradicted herself. She did. And so she went back and forth. I think one of the things that should guide the court, and I hate to do this, but- I still need to understand what happened here. Are you claiming that the Haiti experience also took place in that interim period or not? The Haiti experience, when combined with the police officer experience- No, but did the Haiti experience- I think that occurred before the application. Before, okay. Right. So the only relevant experience that you claim to be necessary to consider was the probation officer experience between the vacancy announcement and the hiring. That is correct, but one of the reasons he doesn't make the year according to the agency's original position was that that military time didn't count. They examined- Military time being the Haiti? The Haiti experience. The Haiti experience. That that didn't count. Where is that in the- That is in the examination of, both the examination and the cross-examination, if I can find the actual page number. What about in, you're saying that part of the agency's decision was to discredit the Haiti experience? Right. Well, they said, she said as much, because- Where? In the transcript itself, both- Not in the decision? See, the distinction is in the- No, no. What did she say in the decision? What did the agency say in the decision about the Haiti experience? He said that it might qualify, but that it doesn't matter because of the time of his hiring, he didn't have, that the time he was hired, the time was a year. Okay, so it had to be- You're saying at the time of the hiring, he didn't yet have a year's worth of experience. With the time of his application, he did not. The time of that application. He had- At the time of the hiring. Right, he had about 11, 10 to 11 months at the time the application was submitted. And the central issue for the administrator- So the idea is that the probation experience that occurred between the time of the vacancy announcement and the time of the hiring would have brought him up to one year. If they had included them both, yes. But it's- How I say it included them both is it's 1.5 years worth of time, and all he needed was for a probation officer. And he only needed one year worth of time in order to get the GS-9. Why are you relying on the Haiti experience at all? Because the original position from the agency that they argued in the hearing itself when they examined Ms. Tanya Bingham-Schweider was that the military time in Haiti didn't enforcing federal law. So that came into the testimony. So on the merits, we believe that that decision was wrong because if you discount the military time, then you don't get over the year. And the CERA violation is, would be made out even if there was a question, even if it was a simple question, did you qualify- You're saying that if you count the Haiti experience, he had a year even before the vacancy announcement? No. He did not. No. No. No. Before. I'm sorry. Yes. Before the vacancy announcement, but not at the time of the application. And I think the critical thing that gets a little- Let me understand. Well, that's why I'm, let me see if I can explain, Judge. The issue in the case is twofold. The issue is, did the agency discount military service in terms of assessing time? And the answer to that is yes. Ms. Tanya Bingham's lawyer said that didn't qualify. The Haiti experience. The Haiti experience. The second issue is, and the critical issue- And what difference would have that have made? Because if they had included the Haiti time and he had been, when he went in to Joe Love and said, you've got my grade wrong because you did not include my military time. And on the- Now, how do we get a year before the vacancy announcement by counting the Haiti experience? Because you combine it with the time as a peace officer. Correct. And that amounts to a year. Over a year. That's why- On the SF-171 application, right? If you, as of the time that he filed that, he didn't yet have a year's worth experience when you combine the Haiti experience with the parole officer experience, right? Correct. He had about 10 months. And didn't Ms. Bingham testify that you look at the time that the SF-171 is submitted for determining the grade? Correct. But that's where the second error comes in, and that's why I'm trying to link them both. The second error is there is no support for that. There's no written policy- I don't understand the first error. I'm still confused. Let's assume that we're measuring experience at the time of the vacancy announcement. Correct. Do you contend that he satisfied the one year at that point? Yes. And how do you get there? You combine the time of law enforcement service in Haiti with the time as a California police officer. And that amounts to more than a year. More than a year. Correct. Okay. So you're contending that they erred by failing to consider the Haiti experience as qualifying. Correct. And you're contending that if you properly consider, in your view, the time between the aside the Haiti experience, he still had one year as a probation officer. Correct. That's correct. Okay. So what did the AJ say in the decision about the Haiti experience? He did not reach the issue. He simply said that the sole issue was, did he have a year at the time he applied? And the answer is no. He did not get to the calculations that we asked him to get to. I don't understand. If in fact the Haiti experience and the probation officer amounted to a year, why didn't the I don't know. He just chose not to address it. That's the problem with his opinion is he came into an opinion and he said, what I look at is I look at the testimony of Tanya Bingham-Schweider who says that you take the application, at the time of the application you calculate the grade. The grade was calculated at GS-7 according to the SF-171. The reason they did that is because they don't include additional experience. And by the way, I discounted the military experience too. That's what she says. That's what she testified to. The judge only reached the issue of the issue of at the time of the application, which was based on an erroneous set of assumptions because Tanya Bingham-Schweider contradicted herself. But that may be. But even you're saying that even at the time of the application, one year was satisfied. The time of the vacancy was closed. He had the year and a half. Okay. Wait. Let's just be clear because I think we're talking about three different things. There's the time of the vacancy announcement. Correct. There's the time of the submission of the SF-171. Which is before the... Yes. Before the vacancy announcement. No, no. The vacancy announcement comes out. He submits the SF-171. Under normal circumstances, there would have been some quick response, but there was a two-year hiring freeze. That's the unhidden gem in all this is that's what happened. And during that period, he came in and when he originally was hired, he went to Joe Love and said, look, I have this qualifying time in Haiti and this time as a peace officer. Can I interrupt you for a minute? Sure. Go ahead. Because earlier I asked you, at the time that he filed his SF-171, did he have a whole year worth of experience? No. And you said no. No. But you also said at the time of the vacancy announcement, he did have one year worth of experience. No. At the time it was closed, I apologized. I was getting a little confused. It's when the vacancy announcement is closed is when the position- It would seem to be easy to get confused about it. So you're not contending that at the time of the vacancy announcement, he had a year's service? No. It's when it was closed. Okay. So, and when it was closed, you're relying, you have to rely on the probation officer experience as being qualifying experience, right? Correct. And that issue- So we don't really need to concern ourselves with Haiti. Well, no, because the only way he would qualify is if you combined it with the Haitian time. That would get him over the year and a half. You said that he did not, even combining the Haitian time with the probation officer experience, he does not have a whole year worth of experience before SF-171, when SF-171 was filed. That's correct. That's correct. And if you look at the OPM regulations on this, this is one of the things I think is missed. We cited it in our brief. At section 521-203, 5 CFR 521, it says that the grade is determined at the time of the appointment. And one only gets- But I think we need to- Certainly. To understand the facts first. Sure. At the time of the actual hiring- Correct. He had, according to you, more than one year of experience. Yes. And you get there by combining the Haiti experience with the probation officer experience. Correct. Correct? Correct. And the government contended that the probation officer experience doesn't count because it's not federal law enforcement experience. No. No? They did not say that? No. They simply said that at the time he applied for the position, he did not have a combined period of more than a year. Then at the hearing, they raised the issue, Tanya Bingham-Schweider on direct raised the issue that she did not calculate, she would not calculate his military time in Haiti. I understand, but you're not addressing what I'm asking about. Did the government contend that the probation officer experience didn't count as federal law enforcement? I am uncertain of that point. There was some contradictory testimony from Tanya Bingham-Schweider about whether she thought it did or not, but it was never made clear in the record to me what the basis of any of that really was. There was never a position taken. Remember, the way this all came about for us was this witness came in after the close of discovery as an essential expert, which we tried to depose. One of the reasons we needed that deposition, Your Honor, is to address some of the questions you're raising. What do you mean by this? She had the opportunity to cross-examine her at the hearing, why isn't that sufficient? Because I could not ... In her disclosures, the pre-hearing disclosures, the government never once stated, if you look at those disclosures, never once stated that she's going to come in and testify that the grade we determined is at the time he applies. No, no, no. Why wasn't cross-examining her at the hearing sufficient to render any failure to allow the deposition non-prejudicial? Because we couldn't go into the basis of her opinion. We couldn't call an expert to counter her. We couldn't ... That's a different question. You're complaining that you didn't get to depose her. Correct. I'm asking you, you had the chance to cross-examine her at the hearing, why didn't that render any failure to allow deposition non-prejudicial? Because look at the way the cross-examination was limited. When I would object that she testified as an expert, the judge would overlook that. You haven't complained about the limitation of the cross-examination. I did. We said in the brief that she was brought on as an expert witness, and we continually objected to that. Where in your brief in this court did you say that there was an error in cabining the cross-examination? I think we alluded to the fact that there was an error in allowing her to test, speculate on issues that she wasn't a recipient with. Where do you say in the brief that there was an error in limiting the cross-examination? I think the error was ... I think our position is that our cross-examination was ... Do you have a page in your brief that you could identify? Certainly, Your Honor. I see I'm out of time. Do you want me to pick it up? You're not out of time. Okay, certainly. Hold on one second, Your Honor. I'm sorry. If you look at page two, we talk about how she engaged in opinion testimony. We also ... Where do you say that the cross-examination was improperly limited? I don't believe we said so directly. I think we're out of time. We'll give you two minutes. Okay. Thank you. Ms. Kristaniak, is that the way you pronounce it? Yes. Thank you, Your Honor. I'd like to start, actually, just by turning to the application that was submitted by Mr. Sorrell. Let me just tell you what the problem is. Of course. The AJ says it was undisputed that the relevant time was the time of the vacancy announcement. But it wasn't undisputed. There's conflicting testimony by Ms. Bingham, perhaps others as well, saying the relevant time is the vacancy announcement or the relevant time is the hiring. And I think what we're trying to figure out is whether if that were an error, whether it was prejudicial. Certainly. And that turns, in part, on the question of whether the probation officer experience, which continued during that period, was, in fact, a qualifying experience. So, on the probation officer experience, because during opposing counsel's argument, he referred him as a police officer, a peace officer, probation officer, I would just like to refer the court to appendix page 574, which is the actual application submitted by Mr. Sorrell in 1995. And you see there that he describes this position we're talking about. And I'm in the section A, the first section there, as an extra help counselor. Hold on. What page? Page 574 in the appendix, which is page 104 in the PDF, Your Honor. We've got... Okay. So, you see there that this position we're talking about, he described, Mr. Sorrell did, as an extra help counselor, a juvenile hall counselor charged with the supervision, care, and custody of minors who are accused of every sort of misdemeanor and felonies. So, I just wanted to make the record clear that that's the experience that Mr. Sorrell is talking about, having continued, I guess, from the time he applied in 1995 through his date of hire in 1998. Right. So, is that... Did the government take the position that that was not a qualifying experience? The factual finding of the AJ was that what the government looked at was the experience at the time of the application. That's the factual finding we're looking at right here. So, we're not talking about whether or not... A different question. Yeah. I'm asking you a different question. Right. I'm asking, let's set the timing issue aside. Did the government contend that this work as an extra help counselor was qualifying or not? So, there was testimony from Ms. Bingham that she, if she, in her capacity, would not qualify this as qualifying experience. However, from a legal perspective, legal arguments, the argument of the agency has always been that the experience at the time of the application is what matters. So, I guess, from a legal perspective, we've not... We're not talking about the timing. We're just asking a different question. Right. Does this experience qualify? The testimony from the relevant witness from the agency was that it would not qualify, no. And I think Mr. Posing Counsel pointed out that this is a USERRA case, and so we need to keep in mind that there needs to be a nexus to Mr. Sorrell's service in order for there to be any recovery, even if there were an error here. And as the court pointed out, he concedes that when he applied in 1995, the combination of the time spent in Haiti and the time spent as a special extra help counselor would not have qualified him for a 9. And so the question is really whether the factual finding that it was the date of application that mattered for the purposes of the GA grade... The question that we're trying to address... Yes. Assume that the relevant date is the date of hiring. Would he qualify, have the one year experience that was necessary? That's the question we're asking. Certainly. The testimony from Ms. Bingham, who again, the agency brought in as... She's a supervisor of the agency right now in this department. She oversees six specialists and two assistants. She's the chief of the special agent recruitment unit. Her testimony was that she would not consider this experience to be qualifying as investigative law enforcement type experience for the purposes of a GS-7 versus 9 under the framework that was set forth in the vacancy. Again, that's not... Where's the description of qualifying experience in the vacancy announcement? Certainly, Your Honor. So that would be part of... So I would turn the court to pages... So 2144 of the appendix, PDF page 118 is where the vacancy announcement occurs. And then if you keep flipping just a couple of pages after that, you have the criminal investigation qualification standards. Which page? Those start on 2147, PDF page 121. 2147 in the appendix, PDF page 121. Thank you. And her theory was because the experience as a probation officer was basically custodial, it didn't come within this description. Again, Your Honor, not probation officer, extra help counselor for juvenile delinquents. Yes, that was her testimony. But again, the factual finding of the AJA did not get that far. He essentially... So it was undisputed that that testimony was undisputed, right? Or was her testimony the contrary? So Mr. Sorrell has testified that he believes he should have qualified as a GS-9 based on the experience he undertook after application deadline to closing. Because what? Because he considers it to be law enforcement type activities. Well, did he testify that he did any of these tasks that are described here? We don't have the full testimony before us. I understand that there was some testimony along the lines that maybe he escorted minors to and from court, oversaw them. Maybe there was some investigation. Again, the question is whether... Of course, again, this is a eutheric case. We have to draw a nexus between his service in Haiti and the failure to give him a GS-9. And the factual finding was that it's the time of application that the agency looks at. You say it's a factual finding. Well, go ahead. Continue your thought. Then I want to ask you about that. Certainly. I just want to say the narrow finding this court would essentially have to reach is that the policy of the agency in 1998 actually was to retroactively look at all the experience gained in the delta between application and actual hire. And that they failed to do so here because of Mr. Sorrell's military service. That's the finding this court would need to make in order to find recovery under USERRA for Mr. Sorrell. So there's been this discussion back and forth about the A.J.'s finding that it's undisputed that you look at the experience at the time of the application, right? Certainly. But even... There is inconsistent testimony from the key witness on this. So the concern is that how can we just review this for substantial evidence when the A.J. mistakenly thought that it was undisputed? And perhaps, you know, when you look at substantial evidence, you're supposed to look at the evidence that favors both sides. And as you're considering that, how can we justify this as a fact finding that's reviewed for substantial evidence given the sentence, you know, the statement that it's undisputed, which is clearly incorrect. Certainly, Your Honor. So what you're referring to is, of course, the fact that Ms. Bingham referred several times during her testimony to the closing date of the announcement. And then as opposing counsel pointed out, in this particular announcement, it said open until filled. And so the closing date of the announcement, as opposed to a normal government job, for example, the one I applied for, I believe it was only open for one month. So I applied in, you know, middle of May. It closed on May 31st. That was the closing date of the announcement. Here we have a job that was open until filled. And so Ms. Bingham was testifying in those contexts. And I can send the court to the portions of her testimony. But she was testifying, I believe, in a more general sense that in general, they look at the closing date. But also, even within that context, her testimony was consistent that what the agency is looking at is what was actually submitted by the applicant at the time of their application. You're telling us we're not supposed to find an inconsistency. But what if we do? Certainly, Your Honor. I think that AJ made a factual finding based on the overwhelming majority of her testimony, again, was consistent that what the agency looks at is the experience that is submitted at the time of the application. But the assumption is that he made a mistake in saying it was undisputed. Right. Let's assume he was wrong about that. What do we do? Assuming... If he made an incorrect factual finding based on, obviously, the high standards for substantial evidence, that would be grounds for this court, of course, to send it back to him. But I don't think that the court needs to get there because the testimony... If there was a showing of prejudice, in other words, a showing that this would have been  Right. ...if the agency had considered the extra help duty experience between the vacancy announcement and the hiring. Right. Would you address that, whether it would have made a difference? Again, I think the court should credit the testimony of Ms. Bingham, who has, I believe, at this point in time, over 20 years' experience doing particularly this, which is reviewing applications and then determining what grade should be assigned to them. And she testified that she would not credit that sort of experience with the kinds of investigatorial, narcotics investigation, law enforcement experience that they would usually use to give a GS-9. In discussing this with my agency counsel, he gave the example of it's set up that way that if you have a couple years' experience as an FBI agent, they want to make sure that when you come over to the DEA, you actually can get a higher grade as opposed to someone who's just coming in. And I would just like to briefly address the assertion made that the military experience was not credited at all. That Ms. Bingham testified to that. That's inaccurate based on the testimony. And I would refer the court to page 18 of the appendix, which is in the AJ's decision, where he stated that military service gives an applicant, such as the appellant, a competitive advantage between candidates for the same position. And as Ms. Bingham testified, essentially it works that based on the experience of the different candidates, they're sectioned out into GS-7, GS-9, GS-11, whether or not you have a master's degree that would get you into a GS-9, for example. Then once you have the experience to be considered for a GS-7, there's a point tallying type system, which I think a maximum is probably about 100 points. You get 10 extra points for any former military service. And so that is calculated into the points. And it gives someone with military service an advantage to receive that job over someone who does not have it. So I just wanted to make the record clear that that was a finding of the AJ. And Ms. Bingham did testify to that effect. OK. Anything further? If there's no further questions, obviously there were some other issues raised by the petitioner. But if the court does not have questions on those, I will see the rest of my time. Thank you. Thank you. Your Honor, very briefly. Mr. Burns. Yes. If you look at page of the appendix 2668, one of the things that there's a couple of misunderstandings here. First of all, Tanya Bingham Swider didn't address his Butte County experience after the SF-171 was filed. Had she, she would have noted as he testified that his duties increased. Question, while you were at Butte County, did you investigate any narcotics-type criminal activities? Yes. So here is the problem with this case. And this is why it's, and frankly, I feel for both attorneys in the court, this is why it's so difficult to address. It's what happens when a judge allows. But this is about Haiti. No, no. It's about Butte County. While you were at Butte County, did you investigate any narcotics-type criminal activities? Answer, yes. That is 19 to 21 on the form. OK. OK. So here's the problem with the case. I think the court's correctly identified it. It's what happens when you allow a surprise witness at the last minute to come in who testifies as a virtual expert, who testifies without any reference to documents or any reference to policies, who's not allowed to be deposed. And the reason that that's important is because... Can I ask you a question? Sure. I understand your position. Sure. Had you had an opportunity to depose Ms. Bingham, what do you think you would have been able to prove? I would have been able to bring an expert in to say that's not the way we do it. I would have been able to... I could have also brought in Joe Love, who could have explained why he had the comments he did. If on the SF-171 that tells the story itself, if the agency's position was you don't qualify as a nine because of your experience, then why did Mr. Love send a note to my client saying, please run this up your chain of command? Did you ever ask to bring in an expert after she testified? We wanted her qualified as an expert. We tried to block her testimony based on that because we didn't know what she was going to testify to. The answer is no. You didn't ask for an expert. Because in the disclosures, they never told us she was going to testify on grade calculations. When she actually testified, did you say, we've been deprived of the opportunity to bring in an expert and we'd like additional time to develop an expert? I believe we referenced in our motion that we could put on contrary witnesses and that we could explore the basis of her testimony. Frankly, until she actually testified, I wasn't... At that point, we've been surprised we need additional time to develop an expert. No, we did not at that time because the decision had already been made that she wasn't an expert. So what we were going to counter, I must have objected 12 times to her expert testimony and I kept being told she was a fact, she was a precipient fact witness even though the agency denied it. So how do I present an expert to counter non-expert testimony that should never have been allowed in in the first instance? So just briefly aside from the exchange that you quoted on 2668, what evidence was there that this was a position within the qualified experience description in the vacancy analysis? Well, there wasn't any because we were surprised by Tanya Bingham-Schweider claiming that going into the issue of the qualifications of the testimony... So this is it, that one column? There may be more. There may be more in pre-hearing submissions. Without looking at the entire record, I can't say. I know that there is some testimony. And again, Your Honor, I think that the problem is that as a court said, there's a process that goes with presenting cases. And it's through discovery and it's through disclosures. And when you get a surprise like this at the end of your position, at the end of your case, right before a hearing, there's no way to counter that. We did everything we could to try to get the recipient witness at the time who actually filled out these forms and discussed this with my client who the agency said they couldn't find. Okay, I think we're out of time. All right, thank you. Thank you. Thank both counsel in case it's submitted.